IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JANELLE QUINN, individually and on behalf of her minor child D.J.Q. Jr. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-00051-JRH-BKE |
| COLUMBIA COUNTY SCHOOL DISTRICT | ) ) ) ) ) | |
| Defendant. | ) | |

### **DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Columbia County School District and submits this statement of material facts as to which there is no genuine issue to be tried.

**I.   Parties**

1. Plaintiff Quinn is the mother of D.J.Q. Jr., a student previously enrolled at Parkway Elementary School for the 2020-2021 school year. (Compl. ¶¶ 1-2).

2. Plaintiff Quinn is a Military and Family Life Counselor employed by Magellan Federal (hereinafter "Magellan"), (Pl.'s Resp. Def.'s Interrog. No. 14; Compl. ¶ 5), who was assigned to Greenbrier Elementary School and Parkway Elementary School for the 2020-2021 school year, (Pl.'s Resp. Def.'s Interrog. No. 13).

3. Defendant Columbia County School District is a Georgia school district which manages and controls the school located within Columbia County, Georgia, including Parkway Elementary School. (Compl. ⁋ 3).

**II.   Incident Giving Rise to Instant Lawsuit**

4. On or about January 19, 2021, during lunch, D.J.Q. Jr. sought the attention of Ms. Julie Owens, a counselor at Parkway Elementary School, to request a different eating utensil. (Compl. ⁋⁋ 13, 14; Video at 11:05:33 – 11:05:45).

5. Instead of supplying a different eating utensil, Ms. Owens picked up the eating utensil, placed the utensil in D.J.Q. Jr.'s mouth, removed the utensil, and placed the utensil in D.J.Q. Jr.'s hand. (Video at 11:05:41 – 11:05:45).

6. Ms. Owens then moved away and returned to lunch duties, and D.J.Q. Jr. proceeded to continue eating his lunch with the utensil. (Video at 11:05:46-11:06:00).

7. On the following day, January 20, 2021, Plaintiff Quinn and her husband met with Dr. Doolittle, Principal of Parkway Elementary School. (Compl. ⁋ 22; Doolittle Dep. 7:3-7:5; 12:21-12:23).

8. Dr. Doolittle first met with the parents, who did not mention discrimination or racism at that time. (Doolittle Dep. 12:21-23).

9. After speaking with the parents, Ms. Owens and D.J.Q. Jr. joined the meeting, and Dr. Doolittle requested that Ms. Owens apologize. (Doolittle Dep. 14:11-20).

10. Dr. Doolittle reported the incident to his supervisor, Dr. Williams. (Doolittle Dep. 15: 1-7).

11. Dr. Doolittle reviewed video footage of the incident, which was also reviewed at different times by Dr. Williams, former Associate Superintendent, and Dr. Carraway, former Superintendent. (Doolittle Dep. 20:19-25; Letter from Dr. Carraway dated February 10, 2021).

12. In response to Plaintiff Quinn's complaints and requests, efforts were put in place to prevent contact between D.J.Q. Jr. and Ms. Owens (Doolittle Dep.15:1-7), including: changing Ms. Owen's lunch duty schedule (Doolittle Dep. 16:1-6; Quinn Dep. 53:14-25); allowing D.J.Q. Jr. to report to the media center when Ms. Owen was needed in D.J.Q. Jr.'s class (Doolittle Dep. 15:21-25; Quinn Dep. 53:14-25); and, requesting Ms. Owens take efforts to avoid D.J.Q. Jr. during class change (Doolittle Dep. 16:8-11, 21:4-9), and to avoid one-on-one interaction. (Quinn Dep. 53:14-25).

13. Plaintiff Quinn sent a letter to the local board of education complaining of the incident by letter dated January 24, 2021, in which Plaintiff Quinn did not allege racial discrimination. (Quinn Dep. 51:1-6; Letter from Plaintiff Quinn dated January 24, 2021).

14. A second meeting was held on February 24, 2021, between Plaintiff Quinn, Dr. Doolittle, and Dr. Williams. (Doolittle Dep. 18:6-13).

15. At this meeting, Plaintiff Quinn stated she believed the action of Ms. Owens (when she interacted with D.J.Q. Jr. in the lunchroom) was an instance of racism. (Doolittle Dep. 18:24-19:5). Plaintiff Quinn further reported the incident to the Professional Standards Commission, U.S. Office of Civil Rights, Columbia County Sheriff's Office, and the U.S. Department of Justice, which referred the matter to the Department of Education. (Quinn Dep. 43:1-23; 64:15-22).

### III. Racial Intent

16. Plaintiff Quinn alleges the nature of the act of placing the eating utensil in D.J.Q. Jr.'s mouth is proof of discriminatory intent. (Quinn Dep. 7:15-21; 63:4-7).

17. Although Ms. Owens has allegedly made comments in the past referring to a student's "football hairdo" or there being "too many Mexicans in Walmart" (Quinn Dep. 8:11-15), Plaintiff Quinn has no knowledge of Ms. Owens taking any action toward another person based upon race or skin color. (Quinn Dep. 33:1-5).

18. Prior to January 19, 2021, Plaintiff Quinn received no prior complaints from D.J.Q. Jr. regarding Ms. Owens and had no reason to think there was any ill feelings between them. (Quinn Dep. 32:5-12).

19. There was no other negative interaction with Ms. Owens for the remainder of the school year. (Quinn Dep. 40:18-22).

20. Although D.J.Q. Jr. is of a young age, he never stated that Ms. Owens' actions were motivated by his race. (Quinn Dep. 76:19-23.) In her letter to Dr. Carraway dated January 24, 2021, Plaintiff Quinn did not allege discrimination on the basis of race, but rather that Ms. Owens violated the student's personal space during the time of the COVID-19 pandemic. (Letter to Dr. Carraway dated January 24, 2021).

21. Although Plaintiff Quinn is usually in the lunchroom during lunch time because it is "prime time" for her to interact with students (Quinn Dep. 34:12-34:13; Doolittle Dep. 10:10-11), Plaintiff Quinn has no specific recollections of Ms. Owens interacting with any other child in the lunchroom other than the incident involving her son D.J.Q. Jr., (Quinn Dep. 33:17-21).

22. Plaintiff Quinn has not witnessed Ms. Owens interact with a student of a different race (or any race) in response to a request for an eating utensil. (Quinn Dep. 70:16-20).

23. Dr. Doolittle never received any other complaints of discrimination against Ms. Owens. (Doolittle Dep. 8:11-14).

24. Dr. Doolittle did not think there was a need to discipline Ms. Owens. (Doolittle Dep. 21:22-22:4).

25. The only acceptable resolution of the matter for Plaintiff Quinn was to have Ms. Owens' employment terminated, and the school district did not believe this was appropriate. (Sherman Dep. 22:9-13; Quinn Dep. 62:19-22.)

**IV.     Retaliation as to Plaintiff Quinn**

26. At the time of the incident giving rise to this lawsuit, Plaintiff Quinn was assigned as an MFLC Counselor at two Columbia County public schools, Greenbrier Elementary School and Parkway Elementary School, where she split duties approximately half and half. (Quinn Dep. 17:17-18, 17:21-24).

27. After the incident, Plaintiff Quinn became an increasing disruption to the school environment because she would follow D.J.Q. Jr. everywhere he would go and it caused concern. (Doolittle Dep. 23:17-20).

28. Anywhere D.J.Q. Jr. would go, Plaintiff Quinn would follow. She would stand outside his class, stand in the halls, stand in the lunchroom, and stand in the commons. (Doolittle Dep. 24:18-25).

29. This was not her responsibility. She was supposed to devote her time to counseling students. (Doolittle Dep. 24:18-25).

30. Plaintiff Quinn initiated a criminal prosecution against Ms. Owens by filing a police report with the Columbia County Sheriff's Department on or about April 28, 2021. (Quinn Dep. 10:7-8).

31. Dr. Doolittle reported the matter to Ms. Sherman, Associate Superintendent replacing Dr. Williams. (Doolittle Dep. 27:8-12; Sherman Dep. 9:2-5).

32. Ms. Sherman became involved in late April 2021. (Sherman Dep. 13:8-25).

33. Ms. Sherman spoke with Ms. Beth Welch at Magellan to describe the events and to ask how to calm the situation at the school. (Sherman Dep. 15:21-16:12).

34. Ms. Sherman never discussed anything with Magellan other than removing Plaintiff Quinn from Parkway Elementary School and for her to remain at Greenbrier Elementary School, which was 1-2 miles away and where Plaintiff Quinn was already serving in addition to Parkway Elementary School. (Sherman Dep. 16:9-21; Welch Dep. 6-11).

35. Defendant Columbia County School District had no complaints regarding the work performance of Plaintiff Quinn and thought highly of her and her services as an MFLC Counselor. (Welch Dep. 54:3-11).

36. When Ms. Welch of Magellan was made aware of the incident at the school, there was an immediate concern because Magellan does not allow an MFLC Counselor to be assigned to the same school where their child or children attend. (Welch Dep. 23:14-20).

37. Magellan believes that a conflict can exist in any situation where a counselor's objectivity is or could be perceived as compromising the performance of MFLC services. (Welch Dep. 38:6-9).

38. In the event of a circumstance that could reflect poorly on the MFLC Program, the matter is reported to the federal government, and the federal government determines if remedial action is appropriate. (Welch Dep. 1-9.).

39. The federal government investigated the matter and agreed with Beth Welch's recommendation that Plaintiff Quinn complete the remainder of the year at the other Columbia County school where she was already assigned. (Welch Dep. 31:5-9).

40. Plaintiff Quinn has no knowledge of Dr. Doolittle ever making any remark which showed racial animus or taking any adverse action based on race. (Quinn Dep. 94:20-25).

41. Other than the fact that Ms. Owens was allowed to remain at Parkway Elementary School while Plaintiff Quinn was reassigned, Plaintiff Quinn has no other reason to believe the request for her reassignment was based on race. (Quinn Dep. 94:16-24).

42. Plaintiff Quinn has no reason to believe that the school district asked her to be reassigned from any other school in the Columbia County School District, other than the school at which her son attended. (Quinn Dep. 94:1-8).

43. The Columbia County School District had no involvement in Magellan's counselor assignment decision-making process for the following school year, and the Columbia County School District never interceded to prevent Plaintiff Quinn from working at any other school in the district. (Welch Dep. 52:17-53:13).

44. Plaintiff Quinn is not aware of any similar situation in which a MFLC Counselor had a child in a school and made an allegation of discrimination or adverse action based upon race or skin color. (Quinn Dep. 96:20-97:8).

45. Magellan had no indication the Columbia County School District was trying to retaliate against or harm Plaintiff Quinn in any way; there was nothing improper in the way the matter was reported to Magellan. (Welch Dep. 55:2-13).

46. For the period of April 29, 2021, through May 3, 2021 (Quinn Dep. 98:3-7), Plaintiff Quinn was told by Magellan not to return to either school until an investigation was completed by the federal government in Washington, D.C. (Quinn Dep. 24:1-9).

47. During that time, Plaintiff Quinn was paid by Magellan, and she was not charged with paid time off. (Pl.'s Resp. Def.'s Interrog. No. 10).

48. After the investigation by Magellan, Plaintiff Quinn was allowed by Magellan to return to Greenbrier Elementary School for the remainder of the school year. (Quinn Dep. 24:1-9, 24:16-19).

49. Ms. Welch of Magellan was not aware of any instance of a parent being reassigned at the request of a school because Magellan tries to avoid the presence of a counselor/parent and child in the same school. (Welch Dep. 42:21-25).

50. Dr. Doolittle never evaluated the employment of Plaintiff Quinn (Doolittle Dep. 11:1-7), and he never discussed her behavior or oversaw her work because she was never an employee of the Columbia County School District. (Doolittle Dep. 30:11-20).

51. Plaintiff Quinn was a Magellan employee. (Welch Dep. 45:12-14).

52. Plaintiff Quinn was supervised by Magellan and paid by Magellan, and her assignments were determined by Magellan. (Welch Dep.45:1-19).

53. The Columbia County School District has no control over pay, supervision or monitoring of Plaintiff Quinn's job performance. (Welch Dep. 47:3-7).

54. Establishment of MFLC installations in local schools are established by the federal government. (Welch Dep. 12:4-8).

55. MFLC Counselors are guests in the installations, and assignments are meant to be rotational. (Welch Dep. 16:12-18.)

56. The program is founded on the premise that the assignments rotate from position to position. (Welch Dep. 15:16-19).

57. The MFLC counselors work with children and staff at the installation, and if the counselors remain in an assignment for too long, lines can get blurred and possibly prevent people from seeking support. (Welch Dep. 16:23-17:7).

58. The desire for Magellan is that the MFLC rotate every year, but that does not always happen. (Welch Dep. 17:8-12).

59. At the end of the school year, MFLC counselors are not automatically reassigned to their current placement. (Welch Dep. 13:13-16).

60. Plaintiff Quinn did not reveal to Magellan that she had a student in the same school as her assignment; if Magellan had known, Plaintiff Quinn would not have been assigned to Parkway Elementary School. (Welch Dep. 51:8-25).

61. Whether or not the Columbia County School District had asked that she be reassigned, upon learning that Plaintiff Quinn was assigned to the same school as her child, Magellan would have determined that she must be reassigned. (Welch Dep. 52:9-16).

                COUNSEL FOR DEFENDANT:

                */s/ William L. Fletcher, Jr.*
                WILLIAM L. FLETCHER, JR.
                STATE BAR NO. 474471

FLETCHER, HARLEY & FLETCHER, LLP
3529 Walton Way Extension
AUGUSTA, GA 30909
(706) 724-0558

                /s/ *Troy A. Lanier*
                TROY A. LANIER
                STATE BAR NO. 437775

TROY A. LANIER, P.C.
430 Ellis Street
Augusta, GA 30901
(706) 823-6800
tlanier@tlanierlaw.com

**Certificate of Service**

The undersigned certifies that he has served a copy of the foregoing on all counsel by filing the same into the CM/ECF system for the Southern District of Georgia as follows:

>Angelik Edmonds (angie@aedmondslaw.com)
>Edmonds Law Office of Civil Rights LLC
>691 John Wesley Dobbs Avenue NE
>Suite V-17, Atlanta, GA 30312

This 1st day of May, 2023.

*/s/Troy A. Lanier*